## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **No. 07-CR-13-TCK** |
| | ) | |
| PATRICK MANNING, JR., | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Indictment (Doc. 82), Defendant's Motion to Dismiss Insufficient Indictment (Doc. 88), and Motion to Suppress (Doc. 61). The Court heard argument on these motions at the November 12, 2008 pre-trial hearing. For the reasons outlined herein, all motions are denied.

### I.       Factual Background

On June 26, 2003, in case number 03-CR-25-HDC before the Honorable H. Dale Cook, Defendant pled guilty to Count 42 of the Indictment, which charged him with misappropriation by a fiduciary in violation of 18 U.S.C. § 6101(a). On August 21, 2003, United States Probation Officer Tony Budzinsky ("Budzinsky") met with Defendant for purposes of gathering information to complete the presentence report. At that time, Defendant provided Budzinsky information for a Net Worth Statement. The Government contends Defendant wrongfully reported to Officer Budzinsky that he only had one account to be listed in the "Assets" section, which was a Bank of America account that had a negative balance of $715.00.

On January 16, 2004, Judge Cook sentenced Defendant to thirty-seven months imprisonment, three years supervised release, and imposed restitution in the amount of $26,437.00.

1

Defendant served his sentence of imprisonment and was placed at the Riverside halfway house facility in Tulsa ("Riverside") for the last three months of his custodial sentence.

On January 4, 2006, officials at Riverside informed U.S. Probation Officer Randall Drew ("Drew") that Defendant had been restricted to Riverside's facility for lying about his employment. On January 18, 2004, Riverside informed Drew that Defendant had been allowed to return to work on the previous day, that he again lied about his employment, and had opened two businesses without informing Riverside staff members. Accordingly, Defendant was restricted to Riverside for lying to staff members until his release from custody on January 23, 2006.

On January 19, 2006, Drew and United States Probation Officer Belinda Ashley met with Defendant in an office at Riverside ("January 19 meeting"). The details of this conversation are disputed. According to Drew's testimony, Drew did not restrain Defendant, and the door to the office remained open during the meeting. Drew also stated that he was not angry during this meeting and at no time raised his voice or spoke in an aggressive or accusatory manner to Defendant. Defendant, on the other hand, testified that the door to the office remained closed during the January 19 meeting, that Drew was angry with Defendant, and that Drew raised his voice at him. Defendant also stated that he felt like he had to talk to Drew and that he would get in trouble if he refused to answer Drew's questions or left the office. Drew did not advise Defendant of his *Miranda* rights.

During this conversation, Drew asked Defendant how he had started the two businesses. Defendant stated that he used approximately $32,000.00 from a 401(k) account he had opened ten years prior. Drew testified that, during the January 19 meeting, he was unaware that Defendant had failed to disclose this 401(k) account to Budzinsky during the pre-sentence interview. At the end

2

of the conversation, Drew told Defendant to appear at the probation office upon his release from Riverside on January 23, 2006.

On January 23, 2006, Defendant met with Drew at the probation office ("January 23 meeting"). Again, the details of this meeting are disputed. According to Drew, Defendant was never restrained and the door to Drew's office remained opened during the entirety of the meeting. Drew testified that he did not consider Defendant to be in custody and that Defendant could have left his office at any point. Drew further stated that Defendant was cooperative and signed search condition and financial condition waivers during the meeting. Defendant maintains, however, that Drew handcuffed him, removed his wallet and keys, took his checkbook and credit cards, and accusatorily and confrontationally began inquiring as to why Defendant did not list his 401(k) account on the Net Worth Statement previously prepared by Budzinsky. Defendant testified that he did not feel free to leave Drew's office and that Drew indicated that Defendant had to answer the questions being asked.

At this meeting, Drew was aware that Defendant had not disclosed the 401(k) account to Officer Budzinsky and asked Defendant about this fact. Drew testified that Defendant stated he did not want to disclose the account and take the chance that the probation office would force him to pay the restitution from this account. Drew and Defendant also discussed general, administrative matters concerning Defendant's supervised release during the January 23 meeting. Both Drew and Defendant testified that the meeting lasted approximately two hours. Drew stated that forty-five minutes of this period was spent discussing Defendant's supervision. According to Drew, at the conclusion of the meeting, he and Defendant went to an office space rented by Defendant for his business from the chamber of commerce. Drew testified that Defendant was not restrained during this visit and that they traveled separately to this office.

On January 26, 2006, the probation office decided to conduct a search of Defendant's residence for financial information, and Drew asked Defendant to come to the probation office. After Defendant arrived, pursuant to probation office policy, Drew hand-cuffed Defendant in the front and informed him that probation officers were going to search his residence pursuant to the search condition placed on Defendant by Judge Cook. Drew estimated that approximately six probation officers took part in the search of Defendant's residence. As a result of this search, bank statements and other personal business records were seized.

As a result of Defendant's failure to disclose his 401(k) account to Budzinsky, the United States brought another Indictment against Defendant, which is the Indictment currently pending before this Court. The Indictment charges Defendant with "knowingly and willfully mak[ing] a materially false, fictitious, and fraudulent statement and representation, in that the defendant failed to list his 401k account, valued at approximately $40,000.00, on a 'Net Worth Statement' utilized by the United States Probation Office in conjunction with the preparation of a presentence investigation report regarding the defendant's guilty plea in 03-CR-25-HDC" in violation of 18 U.S.C. § 1001 ("§ 1001").

This case was originally assigned to Judge Cook. On March 6, 2007 Judge Cook dismissed the Indictment based upon a finding that § 1001 did not apply due to the judicial function exception. The Government appealed the decision to the Tenth Circuit on March 14, 2007. On May 16, 2008, the Tenth Circuit reversed Judge Cook's decision, concluding: "Mr. Manning's statement to the probation officer that omitted mention of his $40,000 401k retirement account is a prosecutable offense under 18 U.S.C. § 1001(a) and is not excepted under the judicial function exception of § 1001(b). Accordingly, we VACATE and REMAND for trial." *United States v. Manning*, 526 F.3d

4

611, 621 (10th Cir. 2008).  The Mandate from the Tenth Circuit issued on August 6, 2008.  On August 12, 2008, this case was transferred to the undersigned.

## II.    Defendant's Motion to Dismiss Indictment (Doc. 82)

Defendant moves to dismiss the Indictment because the Net Worth Statement was never completed or fully executed by Defendant.  Defendant therefore argues there is no factual basis supporting the Indictment.

When reviewing a motion to dismiss under Federal Rule of Criminal Procedure 12(b), the court is to make all factual inferences in favor of the government and assume it could prove the facts alleged.  *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1267 (10th Cir. 2005).  An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true.  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006).  In *United States v. Todd*, the Tenth Circuit reversed a district court's dismissal of an indictment after the district court found insufficient factual support for the charge, finding that whether there was factual support was "not the proper inquiry [because] the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."  *Id.*   The court stated that "in limited circumstances," dismissal at the pretrial stage for insufficient facts might be appropriate where "the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case."  *Id.* at 1068.  The Tenth Circuit has cautioned that pre-trial dismissal in this manner is the "rare exception."  *Id.*  In this case, the Government "objects to the Court's consideration of evidence beyond the four corners of the indictment" and argues that the "evidence should be weighed by the jury at trial."  (*See* Gov't Resp. to Mot. to Dismiss Indictment 3.)

5

Applying this exacting standard, the Court finds that pre-trial dismissal is not appropriate in this case.  Defendant argues that, because he did not initial all pages of the Net Worth Statement or sign the Declaration page of the document, this Statement is unsworn and cannot serve as a basis for the Indictment.  However, § 1001 has been applied to oral statements in addition to written statements, and unsworn statements in addition to sworn statements.  *See United States v. Massey*, 550 F.2d 300, 305 (5th Cir. 1977).  Further, Defendant argues that *Massey* does not apply because this case involves an omission  rather than an affirmative statement.  The Government, in the pre-trial hearing, represented that the evidence will demonstrate that there were affirmative statements as well as omissions giving rise to the charges of this case.  Given these circumstances, the Court does not find pre-trial dismissal of this case appropriate.  However, Defendant is able make a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, if, after presentation of evidence at trial, there is no factual basis for the allegations contained in the Indictment.

## III.    Defendant's Pro Se Motion to Dismiss Insufficient Indictment (Doc. 88)

On October 22, 2008, Defendant filed a pro se Notice of Motion to Dismiss the Indictment (Doc. 66), wherein Defendant set forth six arguments in support of dismissal of the Indictment.  At the November 12, 2008 pre-trial conference, Defendant clarified that this "Notice" was not the actual motion, and he submitted a "Motion to Dismiss Insufficient Indictment" to the Court.  Again, this document is filed pro se.  Because Defendant has represented to the Court that this latter filing, rather than the Notice, is at issue, the Motion to Dismiss Insufficient Indictment (Doc. 88) is before the Court and the previously filed Notice (Doc. 66) is denied as moot.

In his newly filed Motion to Dismiss, Defendant argues that the Indictment is insufficient because it is "too vague and ambiguous (sic) to adequately apprise Manning of the accusations he must be prepared to meet at trail (sic) and protect against subsequent proceeding (sic) based on the

same offense." (Def.'s Mot. to Dismiss. Insufficient Indictment 1.) Defendant also argues that the Government is unable to demonstrate that he made a "material" false statement or that he did anything to "pervert the [probation officer's] duty." (*See* Def.'s Mot. to Dismiss Insufficient Indictment 6-14.)

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Chisum*, 502 F.3d 1237, 1244 (10th Cir. 2007). In this case, the Indictment sets out the offense with sufficient particularity, as the Indictment tracks the statutory language of 18 U.S.C. § 1001(a)(2), provides the date of the alleged wrongdoing, and provides the precise nature of the false, fictitious, and fraudulent statement. The Court does not find the Indictment to be "vague and ambiguous," as charged by Defendant. Further, with regard to Defendant's argument that the Government is unable to demonstrate evidence as to certain elements of the § 1001 violation, the Court declines to dismiss the Indictment on this basis for the same reasons set forth in response to Defendant's Motion to Dismiss Indictment (Doc. 82), discussed above.

## IV.    Defendant's Motion to Suppress (Doc. 61)

Defendant seeks to suppress the following: (1) all statements made during the January 19 meeting; (2) all statements made during the January 23 meeting; and (3) all evidence obtained from the search of his residence on January 26, 2008. In support of this motion, Defendant contends that the meetings on January 18 and January 23 both amounted to "custodial interrogations" and that Drew was thus required to provide Defendant with *Miranda* warnings. Defendant argues that because the statements in these conversations were illegally obtained in violation of *Miranda*, the evidence seized from his residence should be suppressed as fruit of the poisonous tree.

7

*Miranda* applies only to "custodial interrogations." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether a person is in custody for *Miranda* purposes is an objective determination. *United States v. Jones*, 523, F.3d 1235, 1239 (10th Cir. 2008). A court must determine whether "a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest." *Id.* The determination of custody is made from an examination of the totality of the circumstances and is fact intensive. *Id.* Factors to consider are: (1) the extent to which the person is made aware that he is free to refrain from answering questions or to end the interview at will; (2) the nature of questioning, where "prolonged accusatory questioning is likely to crease a coercive environment from which an individual would not feel free to leave"; and (3) whether the person is physically isolated and alone, whether officers constitute a threatening presence, whether weapons are displayed, whether physical contact is made with the individual, and whether the officer uses language or a tone of voice that implies that compliance with the request is compulsory. *Id.* at 1240.

In the instant case, the Court finds insufficient evidence demonstrating that a reasonable person in Defendant's position would have understood the January 18 or the January 23 meeting as the "functional equivalent of formal arrest." *Id.* at 1239. Considering the above factors, the Court finds that neither meeting created the coercive environment or involved isolation or threatening behavior sufficient to create a custodial situation. Further, in *Minnesota v. Murphy*, 465 U.S. 420, 431-32 (1984), the Supreme Court held that a defendant's confession to a new crime to his probation officer did not require *Miranda* warnings even though (1) the probation officer could compel defendant's attendance and truthful answers, (2) the probation officer consciously sought incriminating evidence, (3) defendant did not expect investigatory questions and could not seek counsel before the meeting, and (4) there were no other individuals present to guard against abuse

8

or trickery.  Given this Supreme Court precedent and the testimony presented to the Court at the November 12, 2008 pre-trial hearing regarding the circumstances of the meetings between Defendant and Drew, the Court finds that Drew was not required to give *Miranda* warnings to Defendant in either meeting at issue.  Therefore, the January 26, 2008 search was not "fruit of the poisonous tree."

## V.    Conclusion

For the reasons outlined herein, Defendant's Motion to Dismiss Indictment (Doc. 82), Motion to Dismiss Insufficient Indictment (Doc. 88), and Motion to Suppress (Doc. 61) are DENIED.  Further, Defendant's Notice of Motion to Dismiss the Indictment (Doc. 66) is DENIED AS MOOT.  Trial in this matter will commence on Monday, November 17, 2008 at 9:30am, as currently scheduled.

**ORDERED this 13th day of November, 2008.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**